UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

U.S. BANK, NATIONAL ASSOCIATION, a
financial institution doing business in the State
of Washington,

Plaintiff,

v.

JUNE HENDERSON, an individual,

Defendant.

Case No. 07-5010 KLS

ORDER GRANTING SUMMARY
JUDGMENT

## I.  RELIEF REQUESTED

This matter comes before the Court on the Plaintiff's Motion for Summary Judgment.  (Dkt. #13). The Plaintiff requests entry of summary judgment against the defendant June Henderson in the sum of $82,312.80 which allegedly represents an "overpayment" made to the Ms. Henderson by U.S. Bank.  The Plaintiff also requests dismissal of the Defendant's counterclaim which alleges Plaintiff's negligent breach of a fiduciary as well as contracted duty owed to the Defendant.

## II.  UNDISPUTED FACTS

This claim arises from the Defendant's ownership of stock in Qpass.  In 1998 she was gifted 10,000 shares of common stock and in 2002 there was a 10 for 1 reverse stock split and conversion, which resulted in Ms. Henderson owning 1000 shares of Qpass common stock.

In 2006 Qpass entered into an agreement to merge with Amdocs Ltd. Pursuant to the terms of that agreement, Qpass was to become a wholly owned subsidiary of Amdocs and each outstanding share of Qpass stock was to be converted into a right to receive compensation.

In April 2006 Ms. Henderson became aware, via the internet, that Qpass was being acquired by Amdoc. She provided attachments to her declaration which show that as of April 18, 2006 Amdoc was selling for less than $40 per share. None of her attachments gave any value to the shares of Qpass stock.

On April 21, 2006 the defendant was mailed a solicitation packet by Heller Erhman, LLC, legal counsel for Qpass. This packet contained several documents, including one that informed shareholders that they could expect to receive approximately $4.00 per share of common stock upon approval of the merger. Ms. Henderson denies ever receiving this packet of materials and therefore also denies having any information regarding the value of the Qpass stock.

On May 8, 2006 Mary E. Smith, a Senior Paralegal with Heller Ehrman, wrote a letter to the Defendant[1] advising her that she had not exchanged her old stock certificate (Certificate No. 84) for a new one, which was required as a consequence of a 10 for 1 reverse stock split and conversion. Ms. Henderson was asked to send Certificate No. 84 to Mary Smith who would arrange to have it exchanged for the new stock certificate and then have it processed so the Defendant could receive money in exchange for her stock. Ms. Henderson did inquire of Mary Smith as to the value of the stock and was told that Mary Smith did not know the value and that it would be determined by U.S. Bank.

According to the terms of the merger, U.S. Bank was designated the transfer agent charged with distributing the cash payments to Qpass stock holders. It is undisputed that U.S. Bank made a mistake when it issued a check to June Henderson in the sum of $85,858.23. The check was dated June 13, 2006 and the Defendant cashed the check shortly after its receipt. It is also undisputed that the correct amount for the 1000 shares should have been $3,545.37.

Sometime in late September 2006 Joyce Terry, a Bond Operations Processor for U.S. Bank, called the defendant and told June Henderson that the bank made a mistake and requested return of the overpaid funds. The defendant refused. On October 25, 2006 U.S. Bank sent a letter to June Henderson again advising her of the overpayment in the sum of $82,312.80 and requested return of the funds.

---

[1]The letter was addressed to June Gerard who is now known as June Henderson.

1   On November 21, 2006 Ms. Henderson closed on the sale of her home and on November 22, 2006

2   she closed on her purchase of a home.  Ms. Henderson used the funds from U.S. Bank for the November

3   22, 2006 purchase of her primary residence as well as to pay for repairs and  bills associated with the new

4   residence.  According to the Defendant, the "only remaining funds must be used to pay the taxes owed for

5   2006, which include the distribution from the stocks."

### III.  LEGAL STANDARD

7   Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and

8   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

9   fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson*

10   *v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  The Court must draw all reasonable inferences in favor

11   of the non-moving party.  *See F.D.I.C. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992), *rev'd*

12   *on other grounds,* 512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence of

13   a genuine issue of material fact for trial.  Mere disagreement, or the bald assertion that a genuine issue of

14   material fact exists, no longer precludes the use of summary judgment.  *See California Architectural Bldg.*

15   *Prods., Inc., v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987).

16   Genuine factual issues are those for which the evidence is such that "a reasonable jury could return

17   a verdict for the non-moving party."  *Anderson,* 477 U.S. at 248.    Material facts are those which might

18   affect the outcome of the suit under governing law.  *See id.*  In ruling on summary judgment, a court does

19   not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine

20   issue for trial."  *Crane v. Conoco, Inc.,* 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers,* 969

21   F.2d 747).  Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact

22   to defeat summary judgment.  *Anheuser-Busch, Inc. v. Natural Beverage Distribs.,* 69 F.3d 337, 345 (9th

23   Cir. 1995).  Similarly, hearsay evidence may not be considered in deciding whether material facts are at

24   issue in summary judgment motions.  *Anheuser-Busch, Inc., id.* at p. 345;  *Blair Foods, Inc. v. Ranchers*

25   *Cotton Oil,* 610 F.2d 665, 667 (9th Cir. 1980).

26

27

28   ### IV.  DISCUSSION

1

2      The action for money had and received was invented by the common-law
       judges to secure relief from the narrower restrictions of the common-law
3      procedure, which afforded no remedy in too many cases of merit.  The
       action is a modified form of assumpsit.  It has gone through various
4      transformations; first from tort, then from contract, and afterwards into
       a remedy where there was technically neither tort nor contract.  It was
5      founded on the principle that no one ought unjustly to enrich himself
       at the expense of another, and the gist of the action is that the defendant
6      has received money which in equity and good conscience should have
       been paid to the plaintiff, and under such circumstances that he ought,
7      by the ties of natural justice, to pay it over.

8   *Seekamp v. Small,* 39 Wash. 2d 578, 584, 237 P.2d 489 (1951) citing *Bosworth v. Wolfe,* 146 Wash. 615,

9   264 P. 413, 417 (1928).

10         It is clear that Ms. Henderson received an over payment for her 1000 shares of Qpass stock  in the

11  amount of $82,312.80.  The question is whether it is fair for her to keep those funds.

12         U.S. Bank suggests that the Defendant knew or should have known, at the time she received the

13  check, that the amount was incorrect.  The Plaintiff relies on the information which was mailed to all Qpass

14  shareholders to support this proposition.  The Defendant denies receipt of that information.  That denial

15  raises a material question of fact regarding what Ms. Henderson knew or should have known.

16         The Plaintiff suggests that the Defendant knew, as of April 2006, that Amdoc shares were selling

17  for less than $40 and therefore should have known that Qpass stock would have a value of less than $40

18  and not $85.85.  The Plaintiff alleges that this knowledge should have put June Henderson on notice that

19  the amount in the check was incorrect.  This argument, however, raises a material issue of fact as there is

20  nothing before this court that suggests the Defendant is a sophisticated investor and therefore should have

21  placed some meaning on the difference in stock value for Amdoc and the amount received for the 1000

22  shares of Qpass.

23         The Plaintiff also argues that the true value of the Qpass stock was reasonably ascertainable and

24  suggests that the Defendant could have called Qpass or consulted with a broker.  However, in light of the

25  fact that June Henderson was told by the Senior Paralegal from Heller Erhman that U.S. Bank would

26  determine the value of the stock, it is unclear to this court that contacting Qpass or a stock broker would

27  have provided the information sought.

28         The Plaintiff also suggests that June Henderson is an attorney in a firm that holds itself out to be

1   versed in "stock transactions, buy/sell shareholder agreements, [and] mergers and acquisitions."  However,

2   the same factual issue remains.  Could she have in fact obtained that necessary information, if she were on

3   notice that an inquiry would be appropriate, due to the fact that either she or another attorney in her firm

4   could have obtained the information?  The undersigned believes that the inferences are such that there

5   remains a material issue of fact in that regard.

6        However, it is undisputed that in late September June Henderson was given actual notice of the

7   overpayment.  At that time she refused to return the $82,312.80.  She also received written notice of the

8   overpayment in a letter dated October 25, 2006.  Ms. Henderson has at all times refused to return the

9   overpayment.   As of late September, June Henderson knew or should have know that the bank made a

10  mistake.  It would not be fair to permit her to profit as a result of the Plaintiff's honest error.

11       In her counterclaim, Ms. Henderson alleges that the agency relationship created by the transmittal

12  documents (Exhibit E - 1-7, attached to the Declaration of June Henderson (Dkt. #21)),  is sufficient to

13  prevent recovery by U.S. Bank of the overpayment.   In support of her position, Ms. Henderson relies on

14  the following language in the documents:

15       The undersigned acknowledges that the cash payment received in exchange for the Qpass common
         or preferred stock represented by the Certificates surrendered herewith constitutes the entire and
16       total consideration to which the undersigned is entitled pursuant to the terms of the Merger
         Agreement.
17

18  The Defendant takes the position that this language irrevocably binds her, as well as U.S. Bank, to the

19  amount of the check, regardless of whether there was a mistake on the part of the Plaintiff.  This language

20  does not lead to the result suggested.  "Acknowledging" something to be true based on the information

21  available does not prohibit a later claim of mistake.  The Plaintiff made a mistake.  It would be unfair to

22  permit the Defendant to keep the overpayment of $82,312.80 based on that error, particularly in light of

23  the undisputed fact that the Defendant was given actual notice regarding the mistake and the corresponding

24  overpayment.

25       Ms. Henderson has failed to raise any valid issue regarding reliance other than her feeling that the

26  amount she received "seemed to be a fair amount."  There is no material issue of fact regarding reliance by

27  Ms. Henderson on any representations by U.S. Bank.

28       The Plaintiff is entitled, as a matter of law, to the return of the overpayment in the sum of

$82,312.80.  The Plaintiff's Motion for Summary Judgment (Dkt. #13) is hereby **GRANTED** and the Plaintiff is awarded the sum of $82,312.80 with post judgment interest at the federal judgment rate of interest provided in 28 U.S.C. §1961.  In addition, the Defendant's Counterclaim is hereby **DISMISSED.**

DATED this 29th day of August, 2007.

Karen L. Strombom
United States Magistrate Judge

Order Granting Summary Judgment
Page - 6